ALFRED C. PERHAM ET AL.

*vs.*

HARRY M. VERRILL, CONSERVATOR ET AL.

Oxford.　　Opinion, December 24, 1940.

*Robert B. Dow,*
*Albert J. Stearns,* for plaintiffs.
*Sherman I. Gould,*
*Charles H. Shackley,* for defendants.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MURCHIE, J.   The defendants bring this cause before the court on appeal from a decree of a justice of the Superior Court ordering specific performance of a contract entered into February 7, 1933, between Alfred C. Perham, one of the plaintiffs, and Casco Mercantile Trust Company. The conservator of said Trust Company and the assignee of the contract are joined as parties defendant.

The issue involves the contractual obligation created by an undertaking which reads "Casco Mercantile Trust Company hereby agrees that whenever the amount of the indebtedness of said Alfred C. Perham shall have been reduced in the sum of five thousand dollars of principal from the present amount due without the sale of any of the real estate mortgaged, that it will release to Josephine I. Perham, if living, . . . his homestead stand." The contract was executed concurrently with a mortgage which gave said Trust Company security on several parcels of land including said "homestead stand." In May, 1937, the defendant, United Feldspar Corporation, assumed all the obligations of said Trust Company under the contract when it purchased all notes then held by said conservator which were secured by said mortgage and acquired the mortgage itself by assignment.

The bill is dated April 15, 1938. The Josephine I. Perham named in the contract is one of the parties plaintiff and one of the prayers of the bill, as originally drawn, was for the appointment of a suitable person to act for the defendant United Feldspar Corporation to release and convey to her the property in question. An amendment allowed by a justice of the Supreme Judicial Court on April 22, 1938, substituted a prayer that the court declare it impressed

with a trust for her benefit and appoint a suitable person as an officer of the court to release it to her. The case was referred to and heard by a master, to whose findings exceptions were duly filed on behalf of the defendants. The appeal is from a decree which overrules the exceptions, approves the master's report, sustains the plaintiff's bill, and orders specific performance in accordance with the amended prayers.

The facts disclose that on the day of the execution of the contract the plaintiff, Alfred C. Perham, gave to said Casco Mercantile Trust Company the mortgage above referred to, wherein the condition stated was that it should be void if *he* paid "any and all notes on which his name appears either as a signer or endorser which are now held by said Casco Mercantile Trust Company or any renewals thereof" with interest and costs of collection. Additional language provided for the payment of any additional notes "cashed" by the mortgagee but this language is unimportant since there is no evidence that any additional items were so "cashed." Said Perham was then directly indebted to said Trust Company on notes amounting to $5,027.50 and he was liable to it as endorser on notes in the aggregate principal amount of $21,668.41. The endorsements were for the accommodation of Harold C. Perham on $13,100.00 of his own notes dated in 1927 and 1928 and on notes of Trenton Flint & Spar Company endorsed by him representing $8,568.41 which were dated in 1929.

The case contains no suggestion that the mortgagor has paid the notes secured by the mortgage, which would be necessary to satisfy the condition thereof, or that he has personally made payments sufficient to reduce the principal of the secured debt by five thousand dollars or more, which would clearly meet the requirements of the contract. Plaintiffs rely on the fact that said Trust Company, prior to the assignment of the mortgage, sold the notes of Trenton Flint & Spar Company aforesaid, with certain other obligations of said company of which it was also the owner, to a purchaser having no claim to the benefit of the mortgage and thereby reduced the indirect liability secured by the mortgage. Thus the issue is presented as to the true meaning and effect of the entire transaction of February 7, 1933, constituted by the concurrent execution of the mortgage and agreement aforesaid.

The preambles of the contract recite that the plaintiff, Alfred C. Perham, executed the mortgage "on all of his real estate . . . to secure any and all indebtedness on which he is or may be held" *by the bank* and that the bank had agreed to release a portion of the real estate "when the amount of his *present* indebtedness shall have been *reduced* five thousand dollars" (all italics ours). The master found (1) that the real estate referred to in the agreement was restricted to that enumerated in the mortgage, (2) that the reduction called for in the agreement related to a reduction in either the direct or the indirect liability of the mortgagor, i.e. to his indebtedness, to the mortgagee rather than to his general indebtedness, and (3) that the sale of the Trenton Flint & Spar Company notes constituted a reduction in his indirect principal indebtedness in the amount of $8,568.41. Defendants filed exceptions to the report, alleging that the first two findings were erroneous interpretations of the legal meaning of the terms of the agreement and that the third was not supported as a question of fact by the evidence and that it was unauthorized as a conclusion of law "inasmuch as said transaction in no way reduced the indebtedness . . . but was merely a transfer of the same" to a new creditor. Additional findings are alleged in the exceptions and challenged on stated grounds but they are not material to the issue which is before the court for determination.

Defendants rely on the two principles of law (a) that payments made on a note are to be applied first to the payment of interest and only thereafter to a reduction in principal and (b) that a mortgage is inseparable from the debt which it secures, so that notwithstanding the assignment of a part thereof without the mortgage, the whole debt continues to be secured thereby and any assignee holds the lien as trustee for the owners of the entire indebtedness secured.

Relying on the principle first stated, defendants requested of, and secured from, the master a supplemental report which set forth findings that the notes included items amounting to $14,284.59 over and above the notes endorsed by the plaintiff, Alfred C. Perham, and that the full purchase price was applied against the book value of those additional items and to reimbursement for taxes and insurance premiums paid. This principle of law is immaterial in this case, since there is no suggestion that the proceeds of the sale were intended to be applied in any manner to a reduction in either the in-

terest or the principal of any of the obligations of Trenton Flint & Spar Company. When the sale had been consummated, Trenton Flint & Spar Company owed to the new owner of its obligations exactly the amount which prior to the sale it had owed for principal and interest to the seller, and it necessarily follows that said Trenton Flint & Spar Company was not thereafter indebted to said seller on those notes, either for unpaid principal or accrued interest. Casco Mercantile Trust Company, as the then owner of the mortgage, had no claim against the plaintiff, Alfred C. Perham, on his endorsement of these particular notes of that company.

The issue must depend upon the application of the second principle of law above stated to the particular facts and circumstances of the instant case. Treating of the mortgage alone it is clear that the only right of the mortgagor or of his co-plaintiff is to satisfy the condition stated in the deed, by paying all the liabilities secured, either direct or indirect, and have the lien discharged. As distinguished from such a situation, the facts here show that the rights of the plaintiffs were substantially increased by the separate concurrent agreement and it is undoubtedly true thereunder that said plaintiffs would be entitled to have a designated part of the mortgaged premises released to the plaintiff, Josephine I. Perham, notwithstanding the fact that a substantial part of the secured debt remains unpaid if the indebtedness has been "reduced in the sum of five thousand dollars of principal . . . without the sale of any of the real estate mortgaged." The record discloses, particularly in the cross-examination of plaintiffs' witnesses and in the claims of the parties submitted in their briefs, that by this reference to a sale of any of the mortgaged property it was not intended that any sale would close the door on plaintiffs' rights but merely that the proceeds of any partial sale applied to a reduction of the debt should not be considered as contributing pro tanto to the five thousand dollar reduction. Sale of a part has been made but the parties are agreed that neither the fact of sale nor the application of the proceeds shall be considered to affect the present problem.

Defendants, as heretofore noted, challenge the findings of the master that (1) the real estate intended to be covered by the language of the agreement "without the sale of any of the real estate mortgaged" is restricted to the several items of real estate enumer-

ated in the mortgage executed concurrently with the agreement, and that (2) the indebtedness intended to be covered by the language of the agreement "the amount of the indebtedness of said Alfred C. Perham shall have been reduced" refers to his specific indebtedness to the mortgagee, as erroneous interpretations of the legal meaning of the terms. At the outset it seems best to say that those findings represent to this court interpretations which are entirely correct. The pith of the problem lies in the test of the third finding of the master above stated which defendants challenge as unsupported in fact and unauthorized in law.

The rule stated in *Moore* v. *Ware*, 38 Me., 496, upon which defendants rely as supporting the principle that a mortgage and the debt secured thereby are inseparable, is limited we believe to such debt as is identified in the notes described in a mortgage so that the assignee thereof may properly be held to have notice in the instrument itself as to the identity and amount of the obligations secured. It was said in that case

> "By the assignment of the mortgage the defendant (assignee) was notified of every thing which appears therein. He was informed by that mortgage that it was given for the security of six notes, two of which were overdue if outstanding, and of the other four he purchased one, which, with the three remaining, had not then become payable. And the presumption was, that the three last named were unpaid. He therefore could not be treated as a purchaser without notice."

Similar facts were involved in cases decided in this court which have cited that case as authority, *Webster* v. *Calden*, 56 Me., 204 at 211 ; *Holway* v. *Gilman*, 81 Me., 185 at 188, 16 A., 543. The mortgage here in issue could give to an assignee on its face no notice as to any particular note or notes secured or intended to be secured thereby, nor can it fairly be said that the notes of Trenton Flint & Spar Company, about which the issue revolves, were intended to be secured by the instrument. Rather it was intended to secure the liability of Alfred C. Perham as endorser thereon.

This view of the case is supported by the recitals of the preambles of the agreement before noted. Under the particular facts it seems unnecessary to decide whether or not the limitation therein

stated with reference to the *present* indebtedness operates by a declaration of intention to restrict the more general language of the undertaking itself since there have been no accretions to the then debt held *by the bank* except by way of unpaid interest. Defendants in effect request interpretation that notwithstanding the preamble recital that the purpose of the mortgage was to secure the debt held *by the bank*, the test of the contractual obligation of the mortgagee and its assignee should be made with reference to general and not to specific indebtedness. Two very simple illustrations will demonstrate the unsoundness of this position. If it be assumed that the undertaking of the bank related to the general indebtedness of the mortgagor rather than to his specific indebtedness to it, it would follow that if the mortgagor then owed unsecured indebtedness to some outside creditor or creditors in an amount in excess of five thousand dollars, or even to many times that amount, the plaintiff, Josephine I. Perham, would have become entitled to have the property in question released to her on a net reduction of five thousand dollars in the unsecured indebtedness of the mortgagor, and this would be true even though she, as one of the unsecured creditors, was the beneficiary of the payment effecting such reduction. Again, if such interpretation be accepted, it will inevitably follow that the holder of the mortgage at foreclosure will take title to the mortgaged premises and must use the proceeds of either the redemption or sale thereof for the pro rata benefit of itself and the holder of the particular Trenton Flint & Spar Company notes on which the mortgagor was liable by endorsement.

Such was clearly not the intention of the parties when the mortgage was given, nor when the sale of those notes was made prior to the assignment of the mortgage. We do not believe that the rule of *Moore* v. *Ware*, supra, should be extended to cover liabilities not identified in the mortgage instrument by a description sufficient to charge the assignee with notice that the same were directly secured thereby.

*Appeal dismissed.*
*Decree below affirmed.*